Next case this morning is Perez-Gonzalez v. Lashbrook  Good morning, your honors, counsel. May it please the court. My name is Erin Johnson with the Office of the State Appellate Defender and I represent the petitioner appellate Mr. Raul Perez-Gonzalez. This case comes on appeal from the district court's denial of Mr. Perez-Gonzalez's petition for a writ of habeas corpus. This court should reverse the decision of the district court and order the issuance of a writ of habeas corpus vacating Mr. Perez-Gonzalez's conviction and 10-year sentence for contempt because the state, in seeking the contempt conviction and additional 10-year sentence, violated the terms of the plea agreement the state entered with Mr. Perez-Gonzalez, which specified that if he failed to testify against his co-defendants, he would serve a term of 35 years in prison. Now here the state has agreed in its brief that the plea agreement it entered with the defendant provided for this 35-year sentence in the event of his non-cooperation. The state's distinction is simply that the 35-year sentence only applied in the instance that Mr. Perez-Gonzalez testified untruthfully, but not as here where he refused to testify. Now the state's argument in this regard does not reflect the reasonable expectation of the parties when entering this agreement and it would lead to ridiculous results. Using the state's reasoning in their brief, if Mr. Perez-Gonzalez had testified at his co-defendant's trial, but untruthfully if he had lied, he couldn't be prosecuted for perjury and the 35-year sentence would kick in. But here, because he didn't testify at all, all bets are up. Why couldn't he be prosecuted for perjury? Well, I'm saying using the state's reasoning. The state insists in their brief that, yes, there is this provision for a 35-year sentence if he fails to cooperate, but the state asserts that only applies if he testifies untruthfully and that somehow here, by refusing to testify entirely, he hasn't kicked into that second provision. And I'm saying that that would lead to a ridiculous result where he wouldn't be able to be prosecuted for perjury, but he can be prosecuted for contempt because they're making a distinction between no testimony and untruthful testimony, that really, there is no distinction. Because the written agreement here, if we look at the written agreement that's reflected in the letter from the state to defense counsel, it says that any deviation from truthful testimony will result in the state not only not withdrawing its agreement to reduce Mr. Perez-Gonzalez's sentence, but it says, in such event, the defendant will serve the initially agreed sentence of 35 years. So it's clear from the written agreement, and which I'd point out to this court, that written agreement was incorporated by the trial judge when accepting Mr. Perez-Gonzalez's plea. He was informed by the court, you understand there's a letter that controls your plea and you've read it. So this written agreement that controls the plea says any deviation, no testimony, is a deviation from truthful cooperative testimony. Ms. Johnson, with regard to that, when you got to the second stage, the contempt, either trial or hearing, it sounds like it was stipulated facts, is that correct? That's correct. Why did Mr. Perez-Gonzalez stipulate to the facts at that contempt hearing if he wanted to argue them later on? To be honest, I think that that was something that perhaps trial counsel at the state level overlooked, but there's been no argument by the state at any stage, not in the state court, not here, that there's been any waiver of that issue in the contempt. But going back to this issue of reasonable expectation, what we have from the case law is that plea agreements must be interpreted looking at the reasonable expectation of the defendants when they enter them. That's what due process requires, because the defendant's giving up his right to have a trial. He's giving up his right based on the promise of the state. And in this case, the promise of the state was, if you plead guilty, you will serve 35 years. There was an additional part of the agreement that said, if you cooperate with us, in our discretion, we can come back and vacate this 15 years, as long as you have truthful cooperative testimony. You'll get that 15-year reduction. But then, if you don't cooperate with us, the initially agreed 35 years kicks in. So Mr. Perez-Gonzalez's expectation was, if he pled guilty and he didn't testify, he would serve 35 years. And that's the reasonable interpretation based on this letter. And really, even any reasonable attorney advising Mr. Perez-Gonzalez, if he said, what happens if I don't testify? If you look at this letter, you would say, well, if you don't testify, you served the initially agreed upon 35 years. The state, then now pursuing this contempt and additional 10-year sentence, which is a reduction of 35 years, is unilaterally modifying this agreement. Because there's no suggestion that by refusing to testify, Mr. Perez-Gonzalez could then not serve 35 years. Somehow, he's released from his obligations under his plea agreement. He's pled guilty. He's serving 35 years. So not 35 years. What is the Illinois rule on, is it a day for a day, good time? Well, he's serving 35 years on the original murder plea. And that's 100%. But he's serving day for day on the 10-year contempt sentence. So his total sentence now will be 40 years rather than 35, as outlined under the plea agreement. So just in general, in Illinois, we have different rules from different states. Illinois, in murder at least, it's a full-time... 100%, yes. 100%. And the expectation, as I said, of Mr. Perez-Gonzalez would be that he serves his 35 years. And the state can't get around this by seeking this contempt and this additional sentence, because it does violate the terms of that plea agreement. And that's what Santabello says, that where the state extracts a plea of guilty from the defendant based on promises, those promises have to be honored. And in this case, because this additional 10 years, which was the state's... Was initiated by the state and sought by the state, does violate that plea agreement. So in this case, due process really demands that the 35 years that was originally agreed to... Sorry. Originally agreed to stands. There's no other questions. I'd like to reserve the remainder of my time for rebuttal. All right. Thank you, Counsel. Thank you. Mr. Kriegel? Good afternoon. May it please the court, Counsel. This court can affirm the denial of habeas relief here for two reasons. First, the state court reasonably determined that Petitioner's plea deal did not immunize him from prosecution for contempt. And second, even assuming that prosecutors had promised immunity, there's no clearly established law that requires the state court to provide specific performance as a remedy for the breach of the plea agreement. So on the first point, Counsel is arguing now in this court that... Is focusing on one sentence out of the plea offer letter, and is saying the sentence that says, in such event, the defendant serves 35 years. There are two reasons why there's a problem with her argument. The first is that defendant is serving 35 years on the murder conviction. And so he received the benefit of his bargain in that sense, if you read that provision as saying, if you don't cooperate, you get 35 years. But in fact, that's not what the sentence says at all. If you look at the two or three sentences before that, what the letter says is the prosecution is entering into this agreement on the assumption that defendant's previous statement, his video recorded statement, was truthful. And if that's incorrect, defendant has to come to the prosecution before entering the plea agreement, or before entering his plea of guilty, and say what is incorrect about that statement. And at that point, the defendant is in the position of either continuing with the plea agreement, or saying, no, we don't want your cooperation anymore. And at that point, he gets the 35 years. So the sentence just doesn't apply here at all, because petitioner did not come to the state before entering his plea. And it says nothing about either perjury or contempt as potential repercussions of conduct that would have occurred after the plea was entered. So the state court decision here was based on two factual determinations, both of which were well supported by the record. First, the court found that petitioner broke his promise to cooperate in the Rosales trial. And it looked at the stipulations from the defendant to answer your question. It asked for additional evidence that had not been presented in the trial court, the transcript of the plea hearing, and also this offer letter. And so it looked at all of those pieces of evidence, and it concluded that all of them supported the idea that petitioner had promised that he would cooperate. This wasn't an option that he could choose cooperation or not. And then the second factual finding in the appellate court's decision was that prosecutors never promised that petitioner would be able to disobey a court order to testify and face no consequences. And that was a reasonable determination, because there is nothing on the face of any of this evidence that includes such a promise. And it wouldn't have made any sense for prosecutors to have promised that, because if you think back to the position that the parties were in before the plea deal, petitioner faced, based on his actual conduct, a sentence of between 35 and 75 years. So it wouldn't have made sense for prosecutors to allow petitioner to plead guilty, get the If there's no other questions about that issue, I'll turn to our second argument, which is that under Kernan v. Cuero, the Supreme Court squarely held that there's no clearly established law that requires a particular remedy when a state violates a plea agreement. This is a really conditional argument, isn't it? We'd have to disagree with you on the first argument to get to this one. That's exactly right, Your Honor. Thank you. Although you could resolve the case either way. Well, let me ask you this. Did you indicate that 2254d.1 includes only holdings of Supreme Court decisions, and where the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of the habeas petitioner's claim. Doesn't this, if we went the way the petitioner in this case goes, would stick the federal course into determining state plea agreements? You would not have to do that at all, Your Honor, because the state court actually had two independent holdings in its opinion. If you look on page 20 of the appendix. Okay, well, you don't have to look it up. Yeah, the second holding was that we'll assume that there was a violation of a promise. In that case, we still don't think. That's somewhat an answer. Yes, we still don't think that giving immunity to contempt is a good solution because the court has an independent interest in protecting itself from contempt. And petitioner tries to characterize Quero as saying that the Supreme Court held in that case that the petitioner had, that there was a constitutional violation and that the court had remanded to determine a remedy. But that's simply, that can't be squared with the language in Quero. The court says that it was going to assume purely for argument's sake that the state violated the constitution, but it still was unable to find Supreme Court precedent that clearly established federal, that clearly established federal law demanding specific performance as a remedy. And the court then said it was going to decide no other issue in the case and it was remanding to the Ninth Circuit only for further proceedings consistent with this opinion. So there's nothing in Quero that requires a remand here. And it wouldn't accomplish anything because, as I said, the state court already held that even assuming a constitutional violation, immunity from contempt is not the right remedy. And petitioner's only challenging his contempt conviction. He hasn't sought to withdraw his plea in the murder proceeding. I'd be happy to answer any other questions, but I would otherwise ask the court to affirm. Thank you, counsel. So to begin with, I would dispute counsel's recitation that the state court's determination was correct. The state court's interpretation of this agreement was unreasonable. And the state court really relied on this idea that because the state had not said explicitly in that plea agreement the sole remedy for your breach is 35 years, that somehow that allows them to come in with this contempt because they didn't specify that they weren't going to seek contempt. But again, that gets a field of what the law, what due process demands, which is the reasonable expectation of the defendant. It's not reasonable to say that because the state didn't explicitly, and the state's the drafter of the agreement here. The state puts what they want in this plea agreement. They're the ones in control. Because they didn't explicitly put that they weren't going to seek contempt, now they can come in afterwards and say, we're not happy with how this went for us. We'd like to get more time out of you. Let's go for contempt in 10 years. That's not reasonable. And I think what Ricketts, which is cited in our brief, really shows is that in plea agreements there can be implicit terms. In Ricketts, the defendant waived his right to double jeopardy implicitly because that agreement said, if you don't testify, this agreement is null and void, which is actually distinct from here because the state didn't put any language that said, if you didn't testify, this agreement was null and void. It's implicit that the state said, if you don't testify, this is what will happen to you. You will serve 35 years. That's what the defendant would have understood when he entered this plea, which is really at the meat of this issue. That's what this court has to consider. What did the defendant understand when he said he was pleading guilty? Because regardless of whether it's a good deal, a bad deal, whatever deal it is, the defendant is giving up his rights to have a trial, a fundamental right here, and it's based on the state's promise. And that's why due process demands that we scrupulously honor those promises. So the state court's interpretation was not reasonable. And it is the reasonable expectation of the defendant that he would serve 35 years. And I'd like to, the Quero issue, I think, really gets at the issue of, Quero doesn't definitively say that specific performance is not appropriate. We look at Sanabella. Sanabella said, depending on the situation, there could be specific performance. There could be a withdrawal of the plea. It depended on, in Sanabella, the issue was that he had been promised the state would make no recommendation, and then they did recommend the maximum. Because of that, they said, well, there could be him withdrawing his plea, or we could have a whole new sentencing hearing. And then in Quero, they said, well, specific performance is not required. But I would note that in Quero, the defendant was asking for specific performance of an illegal sentence. His sentence was illegally too low when they made the initial agreement. And he had been given the opportunity to withdraw his plea and said, no, I still want that sentence. The Supreme Court said, well, that's not required. But it didn't say that specific performance is not a remedy. It didn't overrule Sanabella. And we'd argue here that because of the nature of this entire proceeding, specific performance is the only appropriate remedy, because the state has gone around this plea agreement to get the extra 10 years. And I would point out, in closing, that it really is the state's action and not the court for contempt here, because the state asked the trial court to see if he was going to testify or not. And then when he said he wasn't going to, the state asked the court to order him to testify. The judge seemed uncomfortable with that but then did it anyways. And then said, what do you want me to do, state? And the state said, we need you to order him. Then he gets a petition for contempt filed by the state. And the state's the one that seeks this 10-year sentence that's consecutive to his 35-year sentence. So for those reasons, this seeking of this 10-year contempt sentence by the state was in violation of the plea agreement. And Sanabella demands that it be vacated. And we'd ask this court to issue a writ vacating that conviction and sentence. Thank you. Thank you, counsel. The case will be taken under advisement.